Good morning, Your Honors. Robert Clark, Pro Bono Appointed Counsel on behalf of Fermin and Arlinda Aniel. I'd like to reserve two minutes of time for rebuttal. Sure. There are two claims at issue in this appeal. The Aniels claim for wrongful foreclosure and their claim under the Fair Debt Collection Practices Act. I'd like to first briefly address the wrongful foreclosure claim. The district court dismissed the wrongful foreclosure claim for two reasons. The first is the court found that the Aniels had not met the tender requirement for challenging a foreclosure. That decision was incorrect. The tender requirement applies when a plaintiff is challenging foreclosure for procedural defects. Is there now a split in California appellate case law on that question? I don't believe there is a split. I think the cases are fairly consistent on tender not being required where a challenge is claims that the foreclosure was void rather than merely voidable. I believe that point was made even in the case cited in the recent 28J brief filed by defendants, the um. Which is Jenkins? Nativi Dodge case. Okay. At 55. If we decide the other issue against you, we won't get to this issue, will we? The other issue being the Fair Debt Collection Practices Act? Yes. No, I think you will still get to this issue. Those are separate claims. The other issue being the other issue with regard to the wrongful disclosure. Ah, the wrongful disclosure, yes. If you find that the court properly found that the documents were in order and were properly authorized, then, yes, the tender requirement becomes valid. Well, is that what he found, or did he find that the pleadings were inadequate? I think the pleadings, you know, while prepared pro se and, therefore, could be clearer, I think they made the point with enough specificity that the individual signing the substitution of trustee document and the assignment of the deed of trust, as well as the note allonge, were not properly authorized and able to do so. Could you point me to the paragraphs that say that? In my brief? No, the paragraphs in the complaint. Oh, in the complaint. Hold on a second. Let's see. Page 14 of the complaint, page 165 of the excerpts of record. Fourteen? Fourteen, yes. Paragraph? Paragraph. Sorry. Is this not? What did you say the ER is? Sorry. It's ER 165, paragraph 68 of the complaint, alleging that Joanne Rine, who signed the assignment of the deed of trust, is an employee of Aurora. I think in context and under the standard for reviewing pro se pleadings, that can be properly construed as an allegation that she is not, in fact, a vice president of MERS. But there's no direct allegation that she lacks authority. I think that is, like I said, this is a pro se pleading. Is there an opportunity to amend, or could there be an opportunity to amend? Should there be an opportunity? There was an opportunity to amend with respect to the FDCPA claims. There was no opportunity to amend granted with respect to the wrongful foreclosure claims. So you're reciting to what the original complaint? There's a first amended complaint. There is a first amended complaint. The Court had authorized the NALs only to amend it with respect to the Fair Debt Collection Practices Act claims. Okay. Go ahead. Now, didn't the Court also take judicial notice? Well, that was on a different issue. Okay. Right. What about a prejudice allegation? Does she need one? Sorry? Does she need a prejudice allegation? She does need to allege prejudice. I believe she did allege prejudice, again, in a fashion that could be better stated, but wrongful foreclosure prejudices in paragraph 72. These malicious, willful, and fraudulent acts prevented any chance that the plaintiffs could save their property from foreclosure. I believe that is the allegation of prejudice. And you're not looking at the amended complaint? No, because, again, the wrongful foreclosure claims were dismissed without leave to amend in the district court's first dismissal order. Okay. Go ahead. The district court assumed that the assignment documents and substitution documents were properly authorized, and that was one of the grounds for dismissing the wrongful foreclosure claim. This is something that is not necessarily the case. It's not merely speculative for the plaintiffs to believe that there were procedural faults in the authorization process. The fact that Ms. Ryan and Ms. Zarn were employed by the defendants is their original basis for believing that they were not vice presidents of MERS. There's a legal question as to whether the model MERS uses of taking action through its members, who it designates as vice presidents, whether that is a legitimate procedure. I don't believe this Court needs to address the legal question, because the ---- Legitimate in what sense? Hmm? Legitimate in what sense? Legitimate in the sense that ---- Can't you just make anybody you want your agent if you want to? The question is whether state laws require that documents such as substitutions of trustee and so forth need to be signed by someone of a certain capacity and level within the organization, such as vice president. There's a policy issue there with respect to, you know, the certain gravity of the action and what ---- There's a statute that requires that? I'm speaking generally, and I'm afraid I don't have citations for that, but there are in various states requirements that someone be of a certain level, and that is why ---- So your notion would be that these people are phonies because they really don't have any authority. Right. That's a legal question that would have to be resolved by the district court. The factual issue is whether these individuals were, in fact, properly designated and certified as vice presidents of MERS. They identify themselves as such, but as noted in the consent order, which I cited in my reply brief with MERS, there is a substantial question about the procedures MERS used to certify its assigning officers and whether those procedures were adequate. If these individuals were vice presidents of MERS, I would expect that MERS would be able to provide some kind of documentation of that, a list of its vice presidents during the relevant period. It should be a fairly easy factual threshold to overcome. But because this was decided on a motion to dismiss, the district court did not require any factual showing along those lines. So we would ask that the ---- The district court ruled only on the tender issue, or did he also rule on this issue? He addressed this issue. His primary basis was the tender rule. But I'm looking at page ---- Okay, it's page 12, page 30 of the excerpts of record. The court notes that California does not require the trustee to be in possession of an original promissory note. That's correct. The NALs have not alleged that they can or would tender the amounts due. And then finally ---- In the first paragraph on that page, the record of this case demonstrates that the promissory note had been endorsed to Aurora and Aurora had obtained the beneficial interest in the deed of trust and the qualities of the trustee. So that went to the argument that they were not authorized to act because they did not have possession of the original promissory note. But that's a different question. That is a different question, yes, that is. The primary reason for dismissal was the tender requirement. I should probably move on to the FDCPA claims. Again, there's a factual threshold question whether this was a consumer loan. The district court rightly observed that this was a rental property and properly took judicial notice of the bankruptcy filing by the NALs, showing that they lived at a different address. The NALs argued in response to the second motion to dismiss that although they did not live at the property, their intention when they secured the refinancing was that they would eventually live in it. Now, that's a ---- And A, is that good enough? B, is it in the complaint? It is not in the complaint. And they did have a chance to amend it. They did have ---- But what is it good enough? Well, the issue ---- In other words, they say they had an intention, but they didn't do it. They still haven't done it. Their bankruptcy filings reflect that they are in the real estate business, basically. They do own a bunch of rental property. That is correct. And it is a thin, you know, is it enough? Standing on its own, if I were looking at this as the totality of evidence, I would probably say no, it's not enough. The issue is that this was decided on a motion to dismiss without them giving an opportunity to actually provide a full affidavit. This was addressed in a paragraph of their response brief. But I guess what I meant by is it enough, even assuming that was their original intention. Yes. If that is their intention, yes. It wasn't communicated to the lender. It was not ---- it was never implemented. It is still never implemented. The loan as such was for a property that was a rental from the beginning and forever, in fact. Why is there a tent matter? That's what I'm trying to figure out. Because the standard is the purpose for which the credit was extended examining the transaction as a whole. It is about the ---- It's evaluated from whose perspective? Their undisclosed intent or what the lender thought was or understood the purpose to be. That's a fair question. And I actually would have to check the record to see what the representation was as to their intention with respect to this property. I thought it was from something I read that it was a rental property. It was a rental property. I don't know whether they communicated to the lender that they intended to make it their residence. This was a refi. This wasn't a new loan. That is correct. They'd been holding this as rental property all along. That is correct, Your Honor. So why would the lender have any reason to believe, A, that it was now for a residential purpose, and, B, why wasn't it alleged? Wouldn't it have to have been alleged in the complaint that the intent was communicated to the lender? I mean, lenders make a big distinction, in my limited experience having gone through refis, as to what the purpose of the loan is. They evaluate it differently. So whether that would have the matter of just common sense, and I would think as a matter of law that the intent of a contracting party undisclosed doesn't affect the contract. It has to be what the parties mutually understood and was communicated. That's just fundamental contract law. I understand that. That makes sense. Like I say, I don't know that I can say, based on the record as it stands, apart from what was pleaded, what intention was communicated. I will reserve my time. Time is close. Yeah, time is close. Time is close to up. And I should sit down, and I will see if I can find anything to record in the meantime. Thank you. Yes, go ahead. Good morning, Your Honors. May it please the Court. My name is Victoria Edwards. I'm appearing on behalf of the Appellees, Aurora Loan Services, LLC, and Mortgage Electronic Registration Systems, Inc. The anneals try to make this case on appeal something that it is not. They bring new allegations in support of their wrongful foreclosure claim and ignore other facts alleged in the allegations of the complaint that defeat their FDCPA claim. As to their wrongful foreclosure claim, the district court was proper in dismissing this claim because the facts as alleged against the appellees are insufficient to bring this claim. The anneals in the district court focused on whether Aurora and MERS had a beneficial interest in the note and need a trust, and thus whether or not they had a ---- Back up for a minute. Are you still arguing the tender issue, or do you think that's kind of decided at this point, i.e., that if they're actually alleging a void claim, a foreclosure by somebody who doesn't own it, that they don't have to tender? Well, it's the appellee's position that the court does not need to get to that tender argument. It is perhaps the district court was correct in finding that tender did apply, but this Court does not have to get to that decision if it finds that the allegations are insufficient to even bring a wrongful foreclosure claim in the first place. Okay. Now, the appellants focused on whether or not Aurora and MERS had a beneficial interest in the note and need a trust, and thus whether or not they had authority to foreclose. If you look at the attachments of the complaint, you find that MERS is the party that initiated the foreclosure process by substituting quality in. Now, based on Gomes, this alone is a basis for the wrongful foreclosure claim to be filed on appeal, and this Court can affirm the district court's decision on any ground apparent from the record. So based on the attachments of the complaint, it's clear that what we're talking about here is MERS authority to foreclose, and under Gomes, the appellants did not have standing to bring this type of allegation before the district court. And this is supported by the Fontenot decision, Sedano and Jenkins, their recent California appellate court decision, which find that the party initiating foreclosure does not need to have a beneficial interest in either the deed of trust or the note to foreclose. First of all, I don't understand why that's a standing argument. It's a merits argument. I think you're correct, Your Honor. And second of all, why not? What does that mean? It means that they can stand in for somebody else? Somebody has to have the beneficial interest. Right. The person who's foreclosing presumably has to have authority from the person with the beneficial interest. Yes. And the question here, Your Honor, is whether or not the anneals are the proper party to make that allegation in the district court. And it is the position of the appellates that they don't have standing to make that argument, because they would not be ultimately prejudiced if, in fact, the wrong party did foreclose. There's no allegations in either of the complaints in the district court. That suggests that the anneals If somebody who doesn't own the property forecloses, why aren't they benefit why aren't they injured? If somebody who doesn't have a right to have the property for some reason, including because they're not authorized by the beneficial the owner of the beneficial interest, forecloses, then somebody is walking off with the house and they still owe the money to somebody else. Why don't they have an interest? Well, that's the problem here, Your Honor. The allegations in the underlying case do not suggest that the anneals were confused as to who to make payments to, that there were two lenders pursuing them for payment on the loan. Their claim, good, better, and different, is that the person who was trying to get their house didn't have any right to it. But I think that the underlying basis for the Gomes decision is that if there's no, if you're not harmed by the ultimate act here that would I'm trying to understand how they're not harmed. If somebody who has no right to your house takes it, then presumably somebody else who does have a right to the house is going to come back and want your house or you're going to have to pay somebody else. I don't understand this. Well, in the allegations of the underlying case, the anneals do not dispute that they took out a million-dollar loan, that that loan was in default as of August 2008, and they owed that money to someone. Right. But not necessarily to the person who was coming to take their house. That's their argument. Right. And the question here is whether or not they have alleged an injury. In fact, the people I'm trying to understand what possible argument there is about why they have an alleged an injury. Because they have If somebody comes to my house and says, you know, give me your car, you owe money on your car. And you say, well, I may owe money to the car, but I don't owe it to you. You can't have my car. You're just stealing it. Right. Your Honor, the facts that we have before the court, I'm not disagreeing with Your Honor that there could be a There could be a Well, that's the purpose of the standing That's the purpose of it. But why don't they have an injury? They haven't If everything else they're saying is – if they were saying enough, that's a different question. Did they say enough in the complaint? But if they had said what I just said, these people are interlopers. They have no connection to this house. They're coming to take my house. And my injury is if they take my house, I don't have my house and I owe money to somebody else. I think under a certain fact pattern, that might be a valid concern. I think the facts before this Court and the facts that's alleged by the Anneals don't suggest that there was any confusion as to who the lender was or what Well, it's not a question of confusion. If somebody is initiating foreclosure and taking the property that secures the loan, then you still haven't closed the loop on what happens if an unauthorized party then has ownership of the loan, of the secured property. You're saying that, well, then it won't affect the Anneals because the true owner of the property can go after the unauthorized party who foreclosed. Is that what you're saying? That's correct, Your Honor. The party that's They'd never be able to come after the Anneals. They would go after, it would be a dispute between the people who were involved in the loan, making the loan, and whoever took the secured property. That's correct, Your Honor. That's the beauty of the nonjudicial foreclosure process in California. There's no right to a deficiency. So once there's a foreclosure that's taken place, the debt is extinguished and the Anneals are off the hook. So there's no concern there. The person who took the house has nothing to do with the house? Well, the person that's harmed ultimately is the one that had an interest, who was the original owner of the loan and was not able to foreclose and recoup on its losses. That would be the ultimately injured party here, if we're talking about who has a true beneficial interest. But the Anneals, the borrowers in this situation, if there's a foreclosure in California, they're essentially off the hook and there's not going to be another, you know, supposed lender that comes after them for the debt. So that's not a concern here. Just moving on quickly, there's also some allegations in support of the wrongful foreclosure claim regarding the commercial code in California, but based on the DiBerna case, that's not applicable to the nonjudicial foreclosure process in California. Now, there was a passing allegation, as mentioned by my colleague, regarding deficiencies in the assignment, and specifically that MERS misrepresented to the plaintiffs that Joan Ryan was authorized as VP to sign the deed. However, as the Court is well aware, the nonjudicial foreclosure process in California is initiated by a substitution of trustee and notice of default, and neither of those documents that initiate the foreclosure here are claimed to be improper. Now, appellants tried to make new allegations on the appeal suggesting that the substitution of trustee was improper because the person signing on behalf of MERS did not have authority. That's not an allegation found anywhere in the complaints, either the first complaint or the amended complaint. And as the Court is well aware, appellants can't allege new facts on appeal in support of their claims below. Excuse me. Counsel said in that regard that there was no allegation in the first complaint, but they were denied leave to amend with regard to wrongful foreclosure. What's the, in other words, you say there wasn't anything in the first amended complaint either, but counsel is saying, well, they weren't given leave to amend on wrongful foreclosure on this authorization issue. Was that ever before the Court? That was before the Court. In the first? In the first complaint. Okay. And did the Court deny them leave to amend to beef up the allegations with regard to authorization? I believe that they did, but they based the decision. Well, he didn't have, because he ruled that you had, that they hadn't, he ruled against them for reasons that had nothing to do with this. So why would he give them leave to amend on this, which in his view wasn't relevant? You're right, Your Honor. The Court did not get specifically or in detail to that point because it ruled on exclusively. So they didn't have leave to amend with regard to this question because he had already ruled against them on other issues. Yes, Your Honor. Okay. But if you want to split the time, you're over your time. Can I, I want to answer a follow-on question then. You said that we don't need to reach tender. If he was wrong on tender, if it was a void transaction, then wouldn't that have been error to deny? Your Honor, no, because the appellant suggests that the issue with their claim on the wrongful foreclosure is that there is a lack of agency supported by the foreclosure notices, and that would just make it a voidable transaction. This is not a situation such as the Denmark case where there was a new substitution of trustee that was replaced, they replaced the first one, making the notice of substitution of trustee absolutely void. This is a completely different fact pattern. And the same thing with the Halijon case, and there, there was a specific allegation of agency issues, whereas here, there's no claims made. And just really quickly to hit on the FDCPA violation, I think the only thing that the court needs to get to in regards to Aurora and MERS is that, I'm sorry, it's only against Aurora, the only thing the court needs to get to as to Aurora is that it's not a debt collector under the Act, under 15 U.S.C. 1692a6, because as admitted by the anneals in their complaint, the Aurora Loan Services received the servicing of the loan prior to it becoming a default. They received the servicing of the loan according to the complaint on April 2008, and that's in the first complaint, paragraph 14. It's also in the first admitted complaint, paragraph 12. And then the anneals also admit that they defaulted sometime later in August 2008, and that's supported by paragraph 15 in the original complaint and paragraph 13 in the first amended complaint. Thank you. Good morning, Your Honors, and may it please the Court. Melissa Robbins, Coots for Apelles Quality Loan Service Corporation, and McCarthy and Holtvis. Your Honors, I wanted to just touch on the FDCPA cause of action as to these defendants. To briefly address some of the Court's comments about whether this is a consumer debt or a business debt, the Court was interested in discussing the intent of the anneals at the time they took out the loan. I'd also, though, like to point out to the Court that in this Court's prior cases, both Slank and Bloom, which were cited in our briefs, the Court looks not just at the intent at the time that the loan was taken out, but at the transaction as a whole, including the manner in which the loan proceeds were actually used. In both Slank and Bloom, the way that the loan proceeds were actually used differed a little bit from the way in which the loan was taken out at the time of origination, and the Court looked at the actual use of the proceeds to determine whether it was a business or a consumer debt. But what does the record show with regard to both intent and use? Yes, Your Honor. In the record, the anneals in their opposition to Aurora's motion to dismiss on this point stated unequivocally that this property was held for their personal investment for their children's education funds. That's in the excerpts of record, page 48. So by the anneals' own admission in the record, this was an investment. Well, that's not in the record. It's an argument. But what about in the actual complaint? In the complaint itself, there is no allegation whatsoever. The complaint states that the property was a rental, and that's all. There are no allegations. It does say it was a rental. Yes, it does. And it doesn't say we intended to live in it or anything else. That's correct. That's only an argument. Counsel for the appellants has presented that they should have been able to amend the complaint or the matter proceed to summary judgment so that they could present evidence as to what their intention was with regards to the property. However, nothing is alleged in the complaint that would give the Court any reason to believe that they intended it as anything other than a rental. And so this is properly characterized as a consumer debt. I'm sorry. The complaint, you're talking about the original complaint or the First Amendment complaint? I believe that both of them referenced the property as a rental. And then, Your Honor, I see my time is nearly up. But just briefly to touch on the broader issue of whether nonjudicial foreclosure is debt collection, as here the only allegations against Quality Loan Service were that they served a notice of default and a notice of sale, which are statutorily required foreclosure notices. I believe the consensus through the circuits that have decided the issue is that unless an entity fits within 1692A6's broad definition of a debt collector, they are not subject to the entire FDCPA. They are subject only to 1692F6 as an enforcer of a security interest. And there was no allegation here that Quality Loan Service violated that provision. Accordingly, there is no basis for an FDCPA cause of action against Quality Loan Service. Okay. Thank you very much. Thank you. Give you a minute of rebuttal. Thank you, Your Honor. I just want to make two quick points. One, with respect to the consumer nature of this loan, the relevant part in the first amended complaint is at page 70 of the excerpts of record. It's a fairly conclusory allegation, I will acknowledge. Paragraph 36 alleges that the plaintiff is a consumer. Sorry, paragraph 37 is where they allege that, on page 71 of the excerpts. It doesn't even say that. It says, or is a consumer. What's that? It doesn't actually say that. It says, or is a consumer. I'm sorry. Paragraph 37. Paragraph 37. Plaintiffs are a, quote, consumer, close quote, as defined in the statute. That is conclusory. It's very conclusory. So I just wanted you to know where in the complaint that is, for your reference. The second point I want to make, to respond to Ms. Edwards' point about when Aurora acquired the loan. It acquired its servicing rights before the loan was in default. However, it then went on to purportedly acquire the loan itself, through the loan signed by Jody Delphs, after the loan was in default, and while the annuals were in bankruptcy. The district court was aware of this and addressed it in footnote 7 of its August 2010 dismissal order, page 28 of the excerpt from the record. Stating that the court does not reach the argument that Aurora and the others are not debt collectors. Aurora may renew this argument. If it does, in a subsequent motion to dismiss, it should be prepared to identify any authority that supports the proposition that the fact that Aurora serviced the annuals loan before the loan was in default trumps the fact that Aurora claims it became a secured creditor after the loan was in default. So this is an issue the district court was aware of and would need to decide with respect to whether they were debt collectors. Thank you all for your arguments in Aniel v. Aurora Loan Services. The case is submitted and we will go on to the next case, which is United States v. Darney.
judges: Wallace, Fisher, Berzon